**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Civil Division)**

| | |
|---|---|
| **JAMES BRYANT**, ) | |
| 73 Farmington Drive ) | |
| Staunton, VA 24401 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. _____ |
| ) | |
| **UNIVERSITY OF MARYLAND GLOBAL** ) | **COMPLAINT & JURY DEMAND** |
| **CAMPUS,** ) | |
| 3501 University Boulevard East ) | |
| Adelphi, MD 20783 ) | |
| ) | |
| Defendant. ) | |
| ) | |

## <u>COMPLAINT</u>

COMES NOW Plaintiff, James Bryant (hereinafter "Plaintiff" or "Dr. Bryant"), by and through his undersigned counsel, and sues University of Maryland Global Campus (hereinafter "Defendant" or "the University") for cause of action, and states, as follows:

### <u>NATURE OF THE CASE</u>

1. Plaintiff brings this civil action seeking redress for violations of rights guaranteed to him by Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended 42 U.S.C. § 2000e *et. seq.*; Maryland Fair Employment Practices Act (hereinafter "MFEPA"), as amended Md. Code, State Gov't § 20-600, *et. seq.*; and Section 504 of the Rehabilitation Act of 1973, as amended 29 U.S.C. § 794, *et. seq.*

2. On May 15, 2025, Plaintiff received his Notice of Right to Sue, providing him ninety (90) days to file a civil action in the appropriate federal district court, resulting in a deadline of August 13, 2025, to timely file.

1

3. The instant Complaint is filed timely.

4. Defendant unlawfully discrimination against Plaintiff and created a hostile work environment for Plaintiff based on race (Caucasian), disability, and retaliation (prior protected activity).

5. As a result, Plaintiff seeks equitable and monetary relief under Title VII, MFEPA, and the Rehabilitation Act, including, back pay, front pay, compensatory damages for pain and suffering and emotional distress, punitive damages, attorney's fees, and such other and further relief to which he is entitled under the law.

## PARTIES

6. Plaintiff is currently domiciled at 73 Farmington Drive, Staunton, Virginia 24401. Plaintiff is a resident of the Commonwealth of Virginia and is a United States citizen.

7. At all times relevant herein, Plaintiff was employed by Defendant as a full-time employee.

8. Defendant is a public university and part of the University System of Maryland.

9. Defendant is headquartered at 3501 University Boulevard East, Adelphi, Maryland 20783.

10. Defendant is directly liable for the discriminatory actions or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

## JURISDICTION AND VENUE

11. This Honorable Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws, or treaties of the United States,

specifically Title VII and the Rehabilitation Act.  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all state and local law causes of action.

12.    This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

13.    Venue is appropriate in this District because Defendant has a place of business in this judicial district and the acts events and/or omissions giving rise to Plaintiff's claims as described herein occurred in this judicial district. 28 U.S.C. § 1391.

14.    The amount in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand ($75,000) dollars.

## EXHAUSTION OF REMEDIES

Plaintiff has exhausted his administrative remedies as follows:

15.    On April 16, 2024, Plaintiff executed the formal Charge of Discrimination with the Maryland Commission on Civil Rights (hereinafter "MCCR").

16.    The claims included in the April 16, 2024, Charge of Discrimination were:

I believe that I was discriminated against based on my race, Caucasian, my disability and in retaliation for opposing discriminatory activity in the workplace because:
I began my employment with Respondent on February 10, 2013. My most current position is Director. My immediate supervisor is Dr. Rudy J. Watson, Department Chair. My work performance is satisfactory.

On April 3, 2023, I began to be harassed and subjected to different terms and conditions of employment by Dr. Watson. He often speaks to me in a derogatory manner, scrutinize my work performance, undermine my authority, and micromanages me. Dr. Watson often interferes with my work by frequently pulling me away from tasks and making unjustified adjustments to my work and yells at me when I request guidance. On November 7, 2023, I was forced to do my colleague's work.

On November 7, 2023, during a leadership meeting, Dr. Watson told me that I looked like a homeless person although I was dressed in normal business attire. I believe his comment was directed toward the way I walk due to my disability.

In December 2023, I began to be required to attend frequent one-on-one meetings with Dr. Watson, although these meetings are not a stipulation of my contract nor is it a requirement of my counterparts.

My non-Caucasian and non-disabled co-workers are not subjected to the same discriminatory behavior.

On January 29, 2024, during a meeting with Dr. Watson, he issued me a corrective action riddled with unsubstantiated infractions. When I attempted to ask questions about the disciplinary action, he began to yell at me.

On January 30, 2024, I filed an internal complaint due to Dr. Watson's discriminatory behavior and an investigation was initiated.

Subsequently, Dr. Watson continues to subject me to worse discriminatory behavior. For example, on February 5, 2024, during a meeting, Dr. Watson proceeded to berate me. He also threatens me to ensure my participation in the weekly meetings.

I believe that any reason Respondent gives for the harassment, different terms and conditions of employment and discipline is a pretext to discriminate against me due to my race, my disability and in retaliation for opposing discriminatory activity in the workplace.

*See* April 16, 2024, Charge of Discrimination attached hereto as Exhibit 1.

17.    On June 17, 2024, Plaintiff timely filed an amended Charge of Discrimination with the MCCR.

18.    The Amended Charge included the same claims as stated above, but also included the following new claim:

On June 10, 2024, my employment was terminated due to several unsubstantiated infractions.

*See* June 17, 2024, Charge of Discrimination attached hereto as Exhibit 2.

19.    After more than 9 months since he filed his Amended Charge of Discrimination, Plaintiff submitted a Request for Notice of Right to Sue with the EEOC on April 9, 2025.

20.    On April 10, 2025, the EEOC responded to Plaintiff's request stating that "[b]ecause [his] claim is versus a public employer [his] request has been forwarded to the U.S.

Department of Justice (DOJ) for action. That Agency will act on your request and issue the Notice directly to [Plaintiff]."

21.     On May 15, 2025, the Civil Rights Division of the U.S. Department of Justice in concert with the EEOC issued a Notice of Right to Sue to Plaintiff.

22.     This timely filed civil complaint alleging discrimination and harassment based on race, disability, and retaliation follows.

## FACTS

23.     Plaintiff's race is Caucasian.

24.     Plaintiff is disabled due to injuries he sustained while serving in the United States Air Force.

25.     Plaintiff began working for the University on February 10, 2013.

26.     The University became aware of Plaintiff's race and disability status at the time of his hiring.

27.     In March 2020, Plaintiff was promoted to Program Director of Acquisition and Supply Chain Management and began working under the supervision of Business Management Department Chair, Dr. Rudy Watson (hereinafter "Dr. Watson").

28.     Dr. Watson's race is Black.

29.     At the time of his promotion to Program Director, Plaintiff was using a cane due to his disability.

30.     On April 20, 2022, Plaintiff attended a Business Leadership Team (hereinafter "BLT") meeting held by Portfolio Vice President and School of Business Dean, Dr. Pamela Carter (hereinafter "Dr. Carter"), *via* Zoom.

31.     Dr. Carter's race is Black.

32.     During the meeting, Dr. Carter stated that she wanted the University's faculty to be more representative of its students.

33.     One of Plaintiff's colleagues, Dr. Tony Vrba, asked Dr. Carter if she meant that she wanted the faculty to include more individuals affiliated with the military, as the University's student body consisted of a high percentage of veterans and active-duty military servicemembers.

34.     Dr. Carter clarified that she meant she wanted there to be more faculty members who looked like herself.

35.     Plaintiff interpreted this to mean that Dr. Carter wanted the faculty to include primarily Black people.

36.     Beginning on or about April 3, 2023, Dr. Watson began harassing Plaintiff, speaking to him in a derogatory manner on a regular basis, unreasonably scrutinizing his work performance, undermining his authority, and interfering with his work by micromanaging him.

37.     On or about November 7, 2023, Dr. Watson forced Plaintiff to do his colleague's work.

38.     Also on or about November 7, 2023, during a leadership meeting, Dr. Watson told Plaintiff that he looked like a homeless person.

39.     Dr. Watson had knowledge of Plaintiff's disability prior to his offensive statement.

40.     At the time of Dr. Watson's statement, Plaintiff was dressed in business attire and believed that Dr. Watson's comment referred to the way that Plaintiff walked as a result of his disability.

41.     In or around December 2023, Dr. Watson started requiring Plaintiff to attend weekly one-on-one meetings with him to discuss Plaintiff's performance.

42.     These meetings were not a stipulation of his employment contract.

6

43. None of Plaintiff's non-Caucasian and non-disabled counterparts were required to attend such meetings.

44. These meetings interfered with Plaintiff's ability to focus on his work and were harassing in nature.

45. At one such meeting on January 29, 2024, Dr. Watson issued Plaintiff a corrective action riddled with unsubstantiated infractions. When Plaintiff asked questions about the corrective action, Dr. Watson screamed at Plaintiff at least four times over the course of a twenty-eight-minute meeting.

46. On or about January 31, 2024, Plaintiff filed a complaint regarding Dr. Watson's discriminatory treatment of him with the University's Fair Practices Compliance Unit.

47. From February 2024, onward, Dr. Watson refused to approve any of Plaintiff's requests for paid time off.

48. On or about February 5, 2024, Dr. Watson berated Plaintiff during a meeting and threatened him.

49. On March 23, 2024, Plaintiff attended a BLT presentation regarding diversity, equity, and inclusion initiatives.

50. During this presentation, Dr. Carter told a story about a time when she was ignored in an interview, because, as she believed, she was a Black woman.

51. Dr. Carter also stated during this presentation that, "It was going to be [her] way or the highway," and "If people weren't happy working for [her], leave."

52. On April 16, 2024, Plaintiff filed a Charge of Discrimination with the MCCR.

53.     On May 14, 2024, Dr. Carter held a meeting with Plaintiff to discuss his upcoming contract renewal and informed Plaintiff that Dr. Watson would continue to counsel him and provide him with feedback on purported performance concerns.

54.     When Plaintiff asked whether any of his fellow Program Directors were receiving this type of counseling, Dr. Carter confirmed that they were not and explained that Plaintiff was the only Program Director who was "under a performance improvement status."

55.     After the meeting, Plaintiff checked the University's human relations portal and found that there was no documentation in his file regarding him being under any kind of performance improvement status.

56.     On May 29, 2024, Plaintiff filed a second complaint about Dr. Watson's conduct towards him and an initial complaint against Dr. Carter with the University's Fair Practices Compliance Unit.

57.     On June 10, 2024, only twelve (12) days after his complaint to the University's Fair Practices Compliance Unit and less than two (2) months after he filed his Charge of Discrimination with MCCR, Dr. Carter issued Plaintiff a letter stating that his employment was being terminated for "refusal to abide by the terms and conditions of [his] contract" and "professional misconduct."

58.     On June 17, 2024, Plaintiff filed an amended Charge of Discrimination with the MCCR to include his termination.

## CAUSES OF ACTION

### COUNT ONE – VIOLTATION OF TITLE VII
### (Race Discrimination)

59.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

60.     42 U.S.C. § 2000e, *et. seq.*, makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms,  conditions, or privileges of employment on the basis of such individual's race.

61.     Plaintiff is a member of a class protected under 42 U.S.C. § 2000e, *et. seq.*, by virtue of his race (Caucasian).

62.     Plaintiff is an "employee" as the term is defined at 42 U.S.C. § 2000e(f).

63.     Defendant is an "employer" as the term is defined at 42 U.S.C. § 2000e(b).

64.     Defendant violated 42 U.S.C. § 2000e, *et. seq.*, by discriminating against Plaintiff on account of his race when it took the actions against Plaintiff, including, but not limited to: Defendant, by and through its Responsible Management Officials, harassed Plaintiff, spoke to him in a derogatory manner as described *supra*, unreasonably and disproportionately criticized his work performance, undermined his authority, needlessly and relentlessly micromanaged Plaintiff, required him to do his non-Caucasian colleague's work, stated that he looked like a homeless person relating to the way he walks due to his disability, required him to attend one-on-one meetings that were not a requirement of his contract, nor were his non-Caucasian colleagues required to do the same, issued him a corrective action riddled with unsubstantiated infractions and, when Plaintiff asked for details, yelled at him, berated Plaintiff during meetings, and ultimately, terminated Plaintiff's employment without proper justification.

65.     Defendant treated non-Caucasian employees more favorably than Plaintiff.

66.     The reasons proffered by Defendant for its actions against Plaintiff listed above are false and are pretext for unlawful discrimination.

67.     Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

68.    Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

69.    Defendant is directly liable for the discriminatory and retaliatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *respondeat superior.*

70.    As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation, and other forms of pain and suffering that are ongoing and permanent in nature without Plaintiff in any way contributing thereto.

### COUNT TWO – VIOLATION OF TITLE VII
### (Retaliation)

71.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

72.    Title VII prohibits discrimination in the terms, conditions, and privileges of employment due to, among other things, an individual's participation in protected activity.

73.    Plaintiff engaged in protected activity by submitting an internal complaint of discrimination to the University's Fair Practices Compliance Unit, on January 31, 2024, and May 29, 2024, and to the MCCR on April 16, 2024, and June 17, 2024, regarding the discriminatory treatment that he was experiencing.

74.    Defendant was aware of Plaintiff's protected activities.

75.    Soon after Plaintiff's first complaint on January 31, 2024, Plaintiff was subjected to unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

76. Dr. Watson and Dr. Carter knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions.

77. The adverse, retaliatory actions to which Plaintiff was subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

78. Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

79. Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

80. Similarly situated employees with no known prior EEO activity were not subjected to the same, similar, or any adverse treatment.

81. Defendant's unlawful conduct created a climate of fear and intimidation for Plaintiff and other employees, resulting in a chilling effect in violation of Title VII.

82. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

83. Defendant's unlawful conduct negatively impacted the terms, conditions, and privileges of Plaintiff's employment.

84. Defendant's retaliatory conduct was intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his participation in protected activities in opposition to Defendant's discriminatory conduct.

85. Defendant is directly liable for the discriminatory and retaliatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment under the theory of *respondeat superior*.

11

86.     As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation, and other forms of pain and suffering that are ongoing and permanent in nature without Plaintiff in any way contributing thereto.

### COUNT THREE – VIOLATION OF TITLE VII
### (Hostile Work Environment/ Harassment)

87.     Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

88.     Plaintiff is an "employee" as the term is defined at 42 U.S.C. § 2000e(f).

89.     Defendant is an "employer" as the term is defined at 42 U.S.C. § 2000e(b).

90.     Defendant violated 42 U.S.C. § 2000e, *et seq.*, by creating hostile work environment based on race and his protected activity when:[1] Defendant, by and through its Responsible Management Officials, harassed Plaintiff, spoke to him in a derogatory manner as described *supra*, unreasonably and disproportionately criticized his work performance, undermined his authority, needlessly and relentlessly micromanaged Plaintiff, required him to do his non-Caucasian colleague's work, stated that he looked like a homeless person relating to the way he walks due to his disability, required him to attend one-on-one meetings that were not a requirement of his contract, nor were his non-Caucasian colleagues required to do the same, issued him a corrective action riddled with unsubstantiated infractions and, when Plaintiff asked for details, yelled at him, berated Plaintiff during meetings, and ultimately, terminated Plaintiff's employment without proper justification.

91.     Defendant's conduct was unwelcomed.

---

[1] This list is illustrative, but not intended to be exhaustive.

12

92.     For Defendant's unlawful creation of hostile work environment for Plaintiff in violation of Title VII, Plaintiff is entitled to general and special damages, economic damages including front and back pay, compensatory damages, punitive damages, as well as his costs and any other legal and/or equitable relief that this Court deems appropriate.

**COUNT FOUR – VIOLATION OF MARYLAND FAIR EMPLOYMENT PRACTICES ACT ("MFEPA")**
**(Race Discrimination)**

93.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

94.     Md. Code, State Gov't § 20-600, *et. seq.*, makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms,  conditions, or privileges of employment on the basis of the individual's race.

95.     Plaintiff is a member of a class protected, as defined by MFEPA, by virtue of his race (Caucasian). Md. Code Ann., State Gov't §20-606(a)(1)(i).

96.     Defendant was aware of Plaintiff's membership in the aforementioned protected class under MFEPA.

97.     Plaintiff is an "employee" as the term is defined at Md. Code, State Gov't § 20-601(c)(1).

98.     Defendant is an "employer" as the term is defined at Md. Code, State Gov't § 20-601(d)(1).

99.     Defendant violated Md. Code, State Gov't § 20-600, *et. seq.*, by discriminating against Plaintiff on account of his race when it took the actions against Plaintiff, including, but not limited to: Defendant, by and through its Responsible Management Officials, harassed Plaintiff, spoke to him in a derogatory manner as described *supra*, unreasonably and disproportionately

13

criticized his work performance, undermined his authority, needlessly and relentlessly micromanaged Plaintiff, required him to do his non-Caucasian colleague's work, stated that he looked like a homeless person relating to the way he walks due to his disability, required him to attend one-on-one meetings that were not a requirement of his contract, nor were his non-Caucasian colleagues required to do the same, issued him a corrective action riddled with unsubstantiated infractions and, when Plaintiff asked for details, yelled at him, berated Plaintiff during meetings, and ultimately, terminated Plaintiff's employment without proper justification.

100. Defendant treated non-Caucasian employees more favorably than Plaintiff.

101. The reasons proffered by Defendant for its actions against Plaintiff listed above are false and are pretext for unlawful discrimination.

102. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

103. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

104. Defendant is directly liable for the discriminatory and retaliatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *respondeat superior.*

105. As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation, and other forms of pain and suffering that are ongoing and permanent in nature without Plaintiff in any way contributing thereto.

**COUNT FIVE – VIOLATION OF MARYLAND FAIR EMPLOYMENT PRACTICES ACT ("MFEPA")**
**(Harassment)**

106.   Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

107.   Md. Code, State Gov't § 20-606(a)(5), makes it unlawful for an employer to engage in harassment of an employee.

108.   Plaintiff is an "employee" as the term is defined at Md. Code, State Gov't § 20-601(c).

109.   Defendant is an "employer" as the term is defined at Md. Code, State Gov't § 20-601(d)(1).

110.   Defendant violated Md. Code, State Gov't § 20-600, *et seq.*, by creating hostile work environment based on race and his protected activity when:[2] Defendant, by and through its Responsible Management Officials, harassed Plaintiff, spoke to him in a derogatory manner as described *supra*, unreasonably and disproportionately criticized his work performance, undermined his authority, needlessly and relentlessly micromanaged Plaintiff, required him to do his non-Caucasian colleague's work, stated that he looked like a homeless person relating to the way he walks due to his disability, required him to attend one-on-one meetings that were not a requirement of his contract, nor were his non-Caucasian colleagues required to do the same, issued him a corrective action riddled with unsubstantiated infractions and, when Plaintiff asked for details, yelled at him, berated Plaintiff during meetings, and ultimately, terminated Plaintiff's employment without proper justification.

111.   Defendant's conduct was unwelcomed.

---

[2] This list is illustrative, but not intended to be exhaustive.

112. Defendant's conduct was offensive.

113. Defendant is liable under the statute because of actions taken by Defendant's employee(s) who affected Plaintiff's employment, including, but not limited to, his termination from employment.

114. For Defendant's unlawful harassment for Plaintiff in violation of MFEPA, Plaintiff is entitled to general and special damages, economic damages including front and back pay, compensatory damages, punitive damages, as well as his costs and any other legal and/or equitable relief that this Court deems appropriate.

**COUNT SIX – VIOLATION OF MARYLAND FAIR EMPLOYMENT PRACTICES ACT ("MFEPA")**
**(Disability Discrimination)**

115. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

116. Md. Code, State Gov't § 20-600, *et. seq.*, makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment on the basis of the individual's disability.

117. Plaintiff has a "disability" as the term is defined at Md. Code, State Gov't § 20-601(b)(1).

118. Plaintiff is an "employee" as the term is defined at Md. Code, State Gov't § 20-601(c)(1).

119. Defendant is an "employer" as the term is defined at Md. Code, State Gov't § 20-601(d)(1).

120. Defendant violated Md. Code, State Gov't § 20-600, *et. seq.*, by discriminating against Plaintiff on account of his disability when it took the actions against Plaintiff, including, but

not limited to: Defendant, by and through its Responsible Management Officials, harassed Plaintiff, spoke to him in a derogatory manner as described *supra*, unreasonably and disproportionately criticized his work performance, undermined his authority, needlessly and relentlessly micromanaged Plaintiff, required him to do his non-Caucasian colleague's work, stated that he looked like a homeless person relating to the way he walks due to his disability, required him to attend one-on-one meetings that were not a requirement of his contract, nor were his non-Caucasian colleagues required to do the same, issued him a corrective action riddled with unsubstantiated infractions and, when Plaintiff asked for details, yelled at him, berated Plaintiff during meetings, and ultimately, terminated Plaintiff's employment without proper justification.

121. Defendant treated non-disabled employees more favorably than Plaintiff.

122. The reasons proffered by Defendant for its actions against Plaintiff listed above are false and are pretext for unlawful discrimination.

123. Defendant is directly liable for the discriminatory and retaliatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *respondeat superior*.

124. As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation, and other forms of pain and suffering that are ongoing and permanent in nature without Plaintiff in any way contributing thereto.

### COUNT SEVEN – VIOLATION OF MARYLAND FAIR EMPLOYMENT PRACTICES ACT ("MFEPA")
### (Retaliation)

125. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

126. Plaintiff engaged in protected activity by submitting an internal complaint of discrimination to the University's Fair Practices Compliance Unit, on January 31, 2024, and May 29, 2024, and to the MCCR on April 16, 2024, and June 17, 2024, regarding the discriminatory treatment that he was experiencing.

127. Defendant was aware of Plaintiff's protected activities.

128. Soon after Plaintiff's first complaint on January 31, 2024, Plaintiff was subjected to unlawful conduct and adverse actions alleged throughout this Complaint in violation of MFEPA.

129. Dr. Watson and Dr. Carter knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions.

130. The adverse, retaliatory actions to which Plaintiff was subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

131. Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

132. Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

133. Similarly situated employees with no known prior EEO activity were not subjected to the same, similar, or any adverse treatment.

134. Defendant's unlawful conduct created a climate of fear and intimidation for Plaintiff and other employees, resulting in a chilling effect in violation of MFEPA.

135. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

136. Defendant's unlawful conduct negatively impacted the terms, conditions, and privileges of Plaintiff's employment.

137. Defendant's retaliatory conduct was intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his participation in protected activities in opposition to Defendant's discriminatory conduct.

138. Defendant is directly liable for the discriminatory and retaliatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment under the theory of *respondeat superior.*

139. As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation, and other forms of pain and suffering that are ongoing and permanent in nature without Plaintiff in any way contributing thereto.

## COUNT EIGHT – VIOLATION OF THE REHABILITATION ACT
### (Disability Discrimination)

140. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

141. The Rehabilitation Act, 29 U.S.C. § 794(a) makes it unlawful for a program or activity in receipt of federal funds to discriminate against a qualified individual on the basis of disability.

142. Plaintiff is an "individual with a disability" as defined at 29 U.S.C. § 705(20).

143. Defendant is a "program or activity" as defined at 29 U.S.C. § 794(b)(2)(A).

144. Defendant violated 29 U.S.C. § 794, *et seq.*, by discriminating against Plaintiff on account of his disability when it took the actions against Plaintiff, including, but not limited to: Defendant, by and through its Responsible Management Officials, harassed Plaintiff, spoke to him

in a derogatory manner as described *supra*, unreasonably and disproportionately criticized his work performance, undermined his authority, needlessly and relentlessly micromanaged Plaintiff, required him to do his non-Caucasian colleague's work, stated that he looked like a homeless person relating to the way he walks due to his disability, required him to attend one-on-one meetings that were not a requirement of his contract, nor were his non-Caucasian colleagues required to do the same, issued him a corrective action riddled with unsubstantiated infractions and, when Plaintiff asked for details, yelled at him, berated Plaintiff during meetings, and ultimately, terminated Plaintiff's employment without proper justification.

145.   Defendant treated employees with no known disabilities more favorably than Plaintiff.

146.   The reasons for Defendant's discriminatory actions against Plaintiff are false and are pretext for unlawful discrimination.

147.   Defendant is directly liable for the discriminatory and retaliatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *respondeat superior*.

148.   As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation, and other forms of pain and suffering that are ongoing and permanent in nature without Plaintiff in any way contributing thereto.

**COUNT NINE – VIOLATION OF THE REHABILITATION ACT**
**(Retaliation)**

149.   Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

20

150.    Plaintiff engaged in protected activity by submitting an internal complaint of discrimination to the University's Fair Practices Compliance Unit, on January 31, 2024, and May 29, 2024, and to the MCCR on April 16, 2024, and June 17, 2024, regarding the discriminatory treatment that he was experiencing.

151.    Defendant was aware of Plaintiff's protected activities.

152.    Soon after Plaintiff's first complaint on January 31, 2024, Plaintiff was subjected to unlawful conduct and adverse actions alleged throughout this Complaint in violation of the Rehabilitation Act.

153.    Dr. Watson and Dr. Carter knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions.

154.    The adverse, retaliatory actions to which Plaintiff was subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

155.    Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

156.    Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

157.    Similarly situated employees with no known prior EEO activity were not subjected to the same, similar, or any adverse treatment.

158.    Defendant's unlawful conduct created a climate of fear and intimidation for Plaintiff and other employees, resulting in a chilling effect in violation of the Rehabilitation Act.

159.    The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

160. Defendant's unlawful conduct negatively impacted the terms, conditions, and privileges of Plaintiff's employment.

161. Defendant's retaliatory conduct was intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his participation in protected activities in opposition to Defendant's discriminatory conduct.

162. Defendant is directly liable for the discriminatory and retaliatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment under the theory of *respondeat superior.*

163. As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation, and other forms of pain and suffering that are ongoing and permanent in nature without Plaintiff in any way contributing thereto.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court issue judgment granting him the following relief from Defendant:

    a. A declaratory judgment that Defendant discriminated, retaliated, and harassed Plaintiff as alleged herein;

    b. Award compensatory damages, including but not limited to pain and suffering, emotional distress, and reputational damages;

    c. Award punitive damages;

    d. Award any out-of-pocket expenses incurred as a result of Defendant's unlawful conduct;

e.  Award reasonable attorneys' fees, expert witness fees, costs and expenses incurred for this action;

f.  Award equitable, declaratory, and injunctive relief; and

g.  Award such other and further relief as this Honorable Court deems just and equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

Dated: July 24, 2025                         Respectfully submitted,

By:

*/s/ Stephanie Rapp-Tully*
Stephanie Rapp-Tully, Esq.
Bar No. 18555
Tully Rinckey, PLLC
2001 L Street NW, Suite 902
Washington, DC 20036
(202) 787-1900
srapptully@fedattorney.com

*Counsel for Plaintiff*

23